IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


JARED WISE,                              )

    Plaintiff,                          )

                         )

v.                                   )  Case No. 6:24-cv-02009

                         )

GREGORY EDMONT DE LA DOUCETTE,              )

    Defendant.                       )

_____)


**EMERGENCY MOTION TO QUASH SERVICE OF PROCESS AND TO OPPOSE ENTRY OF DEFAULT JUDGMENT; IN THE ALTERNATIVE, TO SET ASIDE ANY ENTRY OF DEFAULT AND TO VACATE ANY DEFAULT JUDGMENT AS VOID**


Filed by:

Gregory Edmont de la Doucette (pro se)

Vanha Porvoontie 342 B 2

01490 Vantaa, Finland

Email: gedmont@gmail.com

Defendant Gregory Edmont de la Doucette ("Defendant"), appearing pro se and specially for the limited purpose of contesting personal jurisdiction, respectfully moves the Court to quash service of process, deny Plaintiff's pending motion for default judgment, and dismiss or stay this action for lack of proper service. In the alternative, Defendant moves to set aside any entry of default under Fed. R. Civ. P. 55(c) and to vacate any default judgment under Fed. R. Civ. P. 60(b)(4).

As confirmed to Defendant by the Clerk's Office, no default judgment presently appears on the docket. Defendant submits this emergency motion out of caution to ensure the Court has a timely record of the lack of valid service and personal jurisdiction before ruling on Plaintiff's default-related filings.

------------------------------------------------------------

FACTUAL BACKGROUND

------------------------------------------------------------

1.  Defendant is a United States citizen who has primarily resided outside the United States since 2002. Since 2024, Defendant has resided principally in Finland. Defendant owns a rural property in Saint-Michel-de-Dèze, Lozère, France, which is visited only periodically and is currently being developed and operated as a charitable foundation site. The property is not Defendant's residence or habitual place of living.

2.  Defendant was in France from October 12, 2024 through January 20, 2025. He did not return to France until early June 2025 and left again shortly thereafter. He returned once more for a brief visit in September 2025 and departed again on September 30, 2025. Defendant was therefore not present in France during the period in which Plaintiff claims service was attempted.

3.  Defendant has never been personally served with the summons, complaint, or any other documents relating to this case. No documents were delivered to Defendant, mailed to Defendant, left with any individual authorized to accept service on Defendant's behalf, or received by any caretaker or other person associated with the Saint-Michel-de-Dèze property. Plaintiff's attempted service was therefore not effected at Defendant's dwelling or usual place of abode, as required under the Hague Service Convention and Fed. R. Civ. P. 4(f)(1).

4.  Defendant first became aware of this action only after being indirectly informed of its existence by a third party. Upon first learning that this case had been filed, Defendant acted promptly to investigate the status of the proceedings and immediately sought to notify the Court of the lack of proper service and personal jurisdiction.

5.  The underlying financial matter giving rise to Plaintiff's allegations was reviewed by the French public prosecutor (*Procureur de la République*) in Mende, France. On October 14, 2024, Defendant was questioned by the French gendarmerie in a prosecutor-supervised interview. After full review, the Prosecutor declined to pursue criminal charges and directed restitution limited to the amount of Plaintiff's original investment (€156,500), without interest or penalties. On December 31, 2024, Defendant transferred €156,500 to CARPA (*Caisse des Règlements Pécuniaires des Avocats*), the attorney-regulated escrow account used for court-supervised restitution in France. CARPA confirmed receipt of the funds on January 16, 2025 and subsequently released the funds directly to Plaintiff's French attorney. Plaintiff has therefore already been fully compensated.

-------------------------------------------------------------

ARGUMENT AND AUTHORITIES

--------------------------------------------------------------

I.  The Court Lacks Personal Jurisdiction Because Service Was Defective.

Even assuming the French Central Authority processed Plaintiff's request under the Hague Service Convention and appointed a *huissier de justice* to attempt delivery, service is not valid unless the address used was Defendant's actual dwelling or usual place of abode at the time of service. Fed. R. Civ. P. 4(e)(2)(B), 4(f)(1).

At the time of the purported service attempts, Defendant was residing in Finland and was not present in France. The property in Saint-Michel-de-Dèze is used only during occasional temporary visits and for charitable foundation development activities and was not Defendant's residence or habitual place of living during the period of attempted service. Service at a location that is not the defendant's dwelling or usual place of abode is ineffective under both the Hague Service Convention and Rule 4.

Because service was not made at Defendant's dwelling or habitual residence, service did not occur, and the Court lacks personal jurisdiction. Any judgment entered without valid service would be void. See *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010).

II.  Any Entry of Default Should Be Set Aside Under Rule 55(c)

Even if a clerk's default had been entered, it must be set aside for good cause under Fed. R. Civ. P. 55(c). Defendant acted promptly upon first learning of the existence of this case and immediately notified the Court of the lack of valid service and personal jurisdiction. See *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001) (prompt action and a potentially meritorious defense satisfy Rule 55(c)).

In addition, Defendant asserts a meritorious defense because the underlying financial matter has already been fully resolved through the French public prosecutor's directives, and Plaintiff has been fully compensated. There is no prejudice to Plaintiff in setting aside any default, and the strong policy favoring decisions on the merits supports such relief. Accordingly, any entry of default should be set aside.

III.  Any Default Judgment Would Be Void Under Rule 60(b)(4).

   A judgment entered without valid service of process and resulting personal jurisdiction is void as a matter of law. Fed. R. Civ. P. 60(b)(4). When a court lacks personal jurisdiction over a defendant because service was not effected in accordance with Rule 4 and the Hague Service Convention, any default judgment must be vacated as void. See *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010); see also *Thomas P. Gonzalez Corp. v. Consejo Nacional de Producción de Costa Rica*, 614 F.2d 1247, 1255 (9th Cir. 1980) (a judgment entered without personal jurisdiction is void and must be set aside).


-------------------------------------------------------

CONCLUSION

-------------------------------------------------------


For the foregoing reasons, Defendant respectfully requests that the Court:

1. Quash any purported service of process in this case;

2. Deny any motion for default judgment filed by Plaintiff;

3. Set aside any clerk's entry of default under Fed. R. Civ. P. 55(c);

4. Vacate any default judgment under Fed. R. Civ. P. 60(b)(4); and

5. Grant such other and further relief as justice requires.

Defendant expressly reserves all rights to proper service of process under the Hague Service Convention and does not waive any defenses available under Fed. R. Civ. P. 12(b), including lack of personal jurisdiction and insufficient service of process.

Respectfully submitted this 6th day of November 2025.

_____
/s/ Gregory Edmont de la Doucette

Gregory Edmont de la Doucette
Vanha Porvoontie 342 B 2
01490 Vantaa, Finland
Email: gedmont@gmail.com
Pro Se Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


JARED WISE,                          )

    Plaintiff,                       )

                           )

v.                                   )   Case No. 6:24-cv-02009

                           )

GREGORY EDMONT DE LA DOUCETTE,              )

    Defendant.                       )

_____)


**EXHIBIT A**

**DECLARATION OF GREGORY EDMONT DE LA DOUCETTE**


Filed in Support of:
EMERGENCY MOTION TO QUASH SERVICE OF PROCESS AND TO OPPOSE ENTRY
OF DEFAULT JUDGMENT;
IN THE ALTERNATIVE, TO SET ASIDE ANY ENTRY OF DEFAULT AND TO VACATE
ANY DEFAULT JUDGMENT AS VOID


Filed by:
Gregory Edmont de la Doucette (pro se)
Vanha Porvoontie 342 B 2
01490 Vantaa, Finland
Email: gedmont@gmail.com

**EXHIBIT A**

**DECLARATION OF GREGORY EDMONT DE LA DOUCETTE**

I, Gregory Edmont de la Doucette, declare as follows:

1. I am the Defendant in the above-captioned matter. I submit this Declaration in support of my Emergency Motion to Quash Service of Process and to Oppose Entry of Default Judgment. I make this Declaration based on my personal knowledge and, if called to testify, I could and would competently do so.

2. I am a United States citizen. Since 2024, I have resided primarily in Finland. I own a property in Saint-Michel-de-Dèze, Lozère, France, which I use only during temporary visits and which is being developed and operated as a charitable foundation site. The property is not my residence or habitual place of living.

3. I was in France from October 12, 2024 through January 20, 2025. I then left France and did not return until early June 2025 and left again shortly thereafter. I returned once more for a brief visit in September 2025 and departed France again on September 30, 2025. I was therefore not present in France during the period in which Plaintiff claims service of process was attempted.

4. I have never been personally served with any summons, complaint, or other documents in this matter. Neither I nor any caretaker or other person associated with the property in Saint-Michel-de-Dèze received any notice, service papers, delivery slips, or postings. When I returned to the property in June 2025, there were no service documents or notices of any kind.

5. I have maintained a verified host profile on the Workaway volunteer exchange platform (www.workaway.info), which I use to locate volunteers for a charitable organization and caretakers during periods when I am not present at the Saint-Michel-de-Dèze property. In early 2025, my Workaway account was unexpectedly suspended despite a record of positive host reviews. Workaway initially informed me only that the suspension was "under standard review." Over several months, I made repeated inquiries requesting clarification. Ultimately, a Workaway representative informed me that the suspension had resulted from a third-party complaint

referencing a civil matter in the United States and alleging "illegal ownership" of the hosting property. The representative also stated that Workaway had been advised not to provide further information. This was the first indication to me that any civil lawsuit had been filed in the United States. I then conducted my own search of public court records and located this case.

6. During the period of this Workaway suspension, I was unable to recruit volunteers or caretakers to be present at the Saint-Michel-de-Dèze property. Because I was residing in Finland during this time, and the property is otherwise unoccupied when caretakers are not scheduled, the suspension had the practical effect of preventing anyone from being present to receive mail, deliveries, or service documents at the property. I include this information solely to explain why I did not receive notice of any attempted service prior to locating the case myself.

7. The underlying financial matter referenced by Plaintiff had previously been reviewed by French authorities. On October 14, 2024, I was questioned by the French gendarmerie in a prosecutor-supervised interview in Mende, France. After full review, the Procureur de la République declined to pursue criminal charges and directed restitution limited to the return of Plaintiff's original investment (€156,500), without interest or penalties.

8. On December 31, 2024, I transferred €156,500 to CARPA (*Caisse des Règlements Pécuniaires des Avocats*), the attorney-regulated escrow account used for court-supervised restitution in France. CARPA confirmed receipt of the funds on January 16, 2025 and subsequently released the funds directly to Plaintiff's attorney. Plaintiff has therefore already been fully compensated.

9. Plaintiff also filed the same allegations with United States authorities. The U.S. Department of Justice declined to pursue charges. Because the matter had been reviewed and closed by both French and U.S. authorities, and restitution had been completed under French supervision, I had no knowledge of or expectation of additional civil proceedings in the United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: November 6, 2025.

/s/ Gregory Edmont de la Doucette

Gregory Edmont de la Doucette
Email: gedmont@gmail.com
(Pro Se Defendant residing abroad)

CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2025, I caused the foregoing filing to be submitted

through the Court's CM/ECF electronic filing system, which automatically sends notice

to all registered parties.

Dated: November 6, 2025

/s/ Gregory Edmont de la Doucette

Gregory Edmont de la Doucette
Pro Se Defendant
Email: gedmont@gmail.com