UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

JARED LANE WISE                                   Case No.  6:24-CV-02009-AP

   Plaintiff

     v.

GREGORY EDMONT DE LA DOUCETTE

   Defendant

---

**PLAINTIFF'S OBJECTIONS TO COURT'S FINDINGS AND RECOMMENDATIONS**

**Request for Oral Argument**

1.    Jared Lane Wise (Plaintiff) files this document in response to the court's findings and recommendations in ECF 30.

**INTRODUCTION**

2.    This case matters far beyond its facts. The Findings and Recommendation issued by Magistrate Judge Potter on April 28, 2026 (ECF No. 30), if adopted by this Court, would enshrine a blueprint for fraud that is as simple as it is dangerous: steal money from a victim; ignore the federal lawsuit that follows; allow a default to be entered against you after nearly ten months of silence; and then—only after the procedural machinery of the court has fully aligned against you—submit a filing claiming you live in Finland. Under the standard articulated in ECF No. 30, that is enough. The court will dismiss the case. It will accept your word without a single

Page 1 – **RESPONSE**

corroborating document. It will not hold a hearing. It will not permit the victim to cross-examine you or submit evidence. And—as an added benefit—the court will volunteer several legal defenses you never thought to raise yourself, defenses that may assist you in future proceedings, at no cost and with no consequence for lying.

3.      That is not a hypothetical concern. It is precisely what happened in this case. And if it is permitted to stand, the beneficiaries of this new standard will not be law-abiding citizens who rely on courts for protection. The beneficiaries will be people who are willing to lie—to victims, to notaires, to banking institutions, to government agencies, and to federal courts—and who have calculated that lying carries no consequence. The losers will be everyone else: the victims of fraud who follow every rule, exhaust every remedy, and spend years and tens of thousands of dollars pursuing justice through proper channels, only to be dismissed on the word of the person who defrauded them, without a hearing, without discovery, and without any meaningful opportunity to be heard despite repeated requests.

4.      Public confidence in the fairness of American courts is already at a historic low. A recent survey found that an "79% of Americans think that the justice system is unfair[1]." The reasons citizens cite are consistent: the system rewards those with resources, connections, and the willingness to game procedural rules, while penalizing those who play by the book. The Findings and Recommendation at issue here is a case study in exactly that dynamic. If adopted, it confirms for every future victim of fraud that the rules of procedure do not protect them—that a defendant who ignores those rules long enough, and lies brazenly enough, can obtain a result that a law-

---

[1] https://www.abajournal.com/news/article/majority-of-americans-find-justice-system-unfair-survey-says

Page 2 – **RESPONSE**

abiding defendant who complied at every step could never achieve. That is an outcome this Court should not countenance.

5.    The facts of this case are not complicated. Plaintiff Jared Lane Wise filed this action on December 3, 2024, after years of attempting through every available channel to recover $189,133.19 stolen through an elaborate scheme of forgery, forged legal documents, and international wire fraud. He retained an attorney in France to investigate Defendant's fraud and retrieve official documents.  He navigated the federal filing process correctly as a self-represented party. He effected expensive service in France in compliance with the Hague Convention. He waited through months of silence from Defendant. He obtained a Clerk's entry of default through proper procedure after Defendant failed to respond for nearly ten months following the filing of the complaint. He moved for default judgment through proper procedure. At every step, Plaintiff followed the rules.

6.    Defendant, by contrast, ignored this Court entirely until September 2025—more than ten months after the complaint was filed, more than five months after he was served, and seven weeks after a default had been entered against him. The Federal Rules of Civil Procedure require a defendant to respond within 21 days of service. Fed. R. Civ. P. 12(a)(1). Defendant responded in approximately 160 days—and only then because a default had already been entered. He did not answer the complaint. He did not deny the fraud. He raised no affirmative defenses through proper pleading. He simply filed a declaration claiming he lived in Finland and had not been properly served. There is no documentary support for this claim. No Finnish residency permit. No Finnish tax records. No Finnish lease. No Finnish bank statements.  No corroborating evidence of any kind. Just his word.

 Page 3 – **RESPONSE**

7.      And yet it was enough—not merely to raise a question, but to dismiss the case entirely. The Magistrate accepted Defendant's word wholesale, without a hearing, without cross-examination, and without requiring a single piece of corroborating documentation. She did so even while acknowledging in her own Findings that she had "some doubt about whether Defendant was in Finland or France at the time of service." ECF No. 30 at 12. And she did so despite the fact that Defendant's own French attorney had, in a filing submitted to a French tribunal that same month, formally identified Defendant as domiciled at his French property—directly contradicting the Finland claim. Within a nine-month period, Defendant had claimed under oath to be a resident of Texas, claimed in a court declaration to reside primarily in Finland, and had his own lawyer represent to a foreign court that he was domiciled in France. One of those statements is perjury. Possibly two. The Magistrate's response to this documented pattern of dishonesty was to credit all of Defendant's unsupported assertions and discount all of Plaintiff's evidence.

8.      The Magistrate wrote that "Plaintiff has not presented sufficient (or really any) evidence to show that Defendant was domiciled in Texas." ECF No. 30 at 13. This statement is both factually incorrect and legally remarkable. Plaintiff produced a signed, sworn government filing—Texas Secretary of State Form 202—in which Defendant himself attested under penalty of perjury that he was an "individual resident" of the State of Texas with a personal address at 1813 FM 69 S, Sulphur Springs, Texas. That is evidence. It is, in fact, the kind of sworn party admission that courts routinely treat as among the most probative categories of evidence available. By contrast, Defendant produced nothing to support his claim of Finnish domicile—not a single document—and was accepted without question. The Magistrate effectively held that a party's sworn declaration of his own Texas residence, submitted to a state government agency, constitutes "really" no evidence of domicile, while the same party's bare, unsupported declaration of Finnish

Page 4 – **RESPONSE**

residence constitutes conclusive evidence to dismiss a federal lawsuit. That is not a sustainable legal standard.

9.    Consider what this standard requires of fraud victims. A defendant who is willing to lie under oath has an infinite supply of responses to any evidence a plaintiff produces. Plaintiff produces a sworn Texas government filing showing Defendant's Texas address? The defendant writes a letter saying he was just lying for administrative compliance. Plaintiff hires a private investigator who photographs the defendant at the Texas residence? The defendant writes a letter saying he was just visiting. Plaintiff obtains utility records? The defendant writes a letter attributing them to a family member. Under the standard the Magistrate has applied, the defendant's word always defeats the plaintiff's evidence—because the defendant's willingness to lie is limitless and the plaintiff's burden of proof is undefined and apparently impossible to satisfy. One must ask: what evidence would have been enough? The Magistrate's opinion does not say. It cannot say— because the honest answer, under the standard implicitly applied, is that no evidence would have sufficed against a defendant willing to keep lying.

10.    The pleading standard under Bell Atlantic Corp. v. Twombly and Ashcroft v. Iqbal requires plausibility—not certainty, not proof beyond a reasonable doubt, not clear and convincing evidence. Plausibility. Given that Defendant himself swore under oath to a Texas address, it is at minimum plausible that he has a connection to Texas sufficient to support diversity jurisdiction— especially when the Magistrate herself acknowledged she was unsure whether Defendant was in France or Finland. If the Magistrate harbored sufficient doubt to reject both of Defendant's claimed foreign domiciles as uncertain, the constitutionally appropriate response was not to dismiss but to hold a hearing. The rules of pleading exist precisely because parties cannot gather evidence without discovery. To hold a plaintiff to a heightened evidentiary standard at the threshold jurisdictional

stage—before any discovery, before any hearing, and without even the opportunity to amend—inverts the purpose of those rules entirely.

11.    The Magistrate compounded every one of these errors by reaching the merits of the case after declaring she lacked jurisdiction to do so. Having concluded that subject matter jurisdiction was absent, she proceeded to rule—without evidence, without a hearing, and based solely on Defendant's own characterizations—that Plaintiff's claims were time-barred, that they were precluded by a French judgment, and that the French judgment had "fully resolved" the underlying dispute. She wrote: "upon the facts laid out in Defendant's declaration, it appears that this claim has already been conclusively adjudicated by the court in France." ECF No. 30 at 16. Those "facts" were Defendant's own assertions. They were unsupported by any documentary evidence. They are in fact false, as despite Defendant returning in September 2025 a significant portion of the amount awarded to Plaintiff in French court in September 2024, Defendant still owes a significant amount of the judgment to Plaintiff.  Due to this failure to pay the entire judgement, the French court has authorized Plaintiff to seize and auction the French property and that process is continuing now.  Plaintiff can provide numerous documents from the French court that confirm Defendant has not repaid the full judgement and that the seizure process is continuing, but was never provided an opportunity by the Magistrate Judge.  Defendant's false claims were accepted wholesale, as if a defendant's unsupported word constitutes proof of claim preclusion at the pleading stage.

12.    Consider the implications. Imagine a motion to dismiss in which a defendant, having failed to answer, submits a declaration asserting that he already paid the plaintiff. Under standard pleading rules, the complaint's allegations are accepted as true, and a bare, unsupported assertion of payment would not survive a motion to dismiss—because the court is not permitted to

Page 6 – **RESPONSE**

accept unpleaded, undocumented facts as true against the plaintiff's allegations. The Magistrate's approach creates a different and more defendant-favorable standard: a defendant may, at the threshold stage, assert without evidence that his liability has been extinguished, and the court will accept that assertion and effectively grant summary judgment—all without the plaintiff having had any opportunity to take discovery, gather evidence, or be heard. Claim preclusion and accord and satisfaction, if genuinely applicable, are issues for summary judgment supported by authenticated documents and properly briefed legal arguments. They are not issues to be resolved on the basis of a declaration that Plaintiff was never given the opportunity to contest.

13.    None of these defenses—statute of limitations, claim preclusion, accord and satisfaction—were raised by Defendant. He did not plead them. He did not brief them. Under Fed. R. Civ. P. 8(c), affirmative defenses must be raised in a responsive pleading or they are forfeited. Defendant filed no responsive pleading. The Magistrate raised these defenses sua sponte, briefed them, and ruled on them adversely to Plaintiff—all without notice, without an opportunity for Plaintiff to respond, and without any of the evidentiary foundation that would be required if these defenses had been properly raised. In doing so, the Magistrate did not apply the law neutrally. Instead, she provided Defendant with free legal representation and strategic advocacy, volunteering defenses that may prejudice Plaintiff in future proceedings, while simultaneously condoning without admonishment the undisputed and documentarily supported fact that Defendant made materially inconsistent sworn statements to multiple courts and government authorities. The Court was quick to identify Plaintiff's alleged deficiencies but conspicuously silent about Defendant's demonstrated dishonesty—dishonesty that, in the context of the Texas filing or his affidavit claiming to reside in Finland, may constitute a crime.

Page 7 – **RESPONSE**

14.     Finally, the denial of leave to amend was itself an independent error of the first order. Fed. R. Civ. P. 15 commands that leave to amend be freely given when justice so requires. Here, where a pro se plaintiff produced a sworn Texas government filing as evidence of Defendant's domestic domicile, where Defendant's own inconsistent statements make his claimed foreign domicile deeply suspect, and where Plaintiff was given no opportunity to conduct any discovery—the denial of even the limited opportunity to amend the complaint is not merely harsh. It is the final act in a proceeding that systematically foreclosed every avenue by which Plaintiff might have obtained a fair hearing. He filed in 2024. He pursued the case diligently for over a year. He spent tens of thousands of dollars in legal fees in France. He was met at every turn by a Court that dragged its feet and then, at the critical moment, shut the door—based on the words of a person credibly accused of fraud, without any meaningful opportunity for Plaintiff to be heard.

15.     The Findings and Recommendation must be rejected. Not merely because it is legally wrong—though it is, on multiple independent grounds—but because if it stands, it sends a message that the law cannot afford to send: that the federal courts are available to victims of fraud only if their fraudster is an honest good faith party that is willing to cooperate with jurisdiction. If he is not—if he is willing to lie without end, to ignore process, and to claim whatever domicile is most convenient at the moment—then the victim will find the courthouse door closed, the judge acting as his adversary's counsel, and the rules of procedure serving not as a shield but as an instrument of further victimization. This Court has the power and the obligation to correct that result by rejecting the magistrates recommendation. Plaintiff respectfully urges it to do so.

**STATEMENT OF FACTS**

## I.    Plaintiff Filed This Action Correctly and Pursued It Diligently.

On December 3, 2024, Plaintiff filed a Complaint alleging fraud in the inducement arising from Defendant's scheme to steal Plaintiff's $189,133.19 investment in a French real estate property. ECF No. 1. The fraud included forged legal documents, international wire transfers directed to Defendant's personal accounts under false pretenses, and a fabricated corporate structure that was never created.  Defendant continued to lie to Plaintiff through June 2024 about the status of Plaintiff's investment.  Id. ¶¶ 3, 9, 46.

Service on Defendant in France required compliance with the Hague Convention. Plaintiff retained a professional process server, and service was accomplished on April 4, 2025. ECF No. 12. Defendant's answer was due April 25, 2025. Defendant filed nothing.

On July 15, 2025, the Court issued an order noting Defendant's failure to appear and directing Plaintiff to seek an entry of default. ECF No. 13. Plaintiff moved for entry of default on September 5, 2025. ECF No. 17. The Clerk entered default on September 16, 2025. ECF No. 18. Plaintiff then moved for default judgment on September 29, 2025. ECF No. 19.

Defendant had now ignored this Court for over six months following service. He had not answered. He had not moved to dismiss. He had not filed any document with this Court. It was only after a default had been entered—after all procedural deadlines had passed, after Plaintiff had invested additional time and expense pursuing a default judgment—that Defendant appeared.

## II.    Defendant Appeared Only After Default, Submitting an Uncorroborated Declaration Claiming He Lived in Finland.

On November 6, 2025—more than six months after being served and more than seven weeks after the entry of default—Defendant registered with the Court's CM/ECF system and

Page 9 – **RESPONSE**

filed an emergency motion to quash. ECF No. 22. His motion was supported solely by a sworn declaration (the "First Doucette Declaration") in which he claimed that he had lived primarily in Finland since 2024 and that the French property at which he was served was merely a temporary visit location. He provided no documentary evidence of Finnish residency—no lease agreement, no utility bill, no Finnish tax records, no Finnish residency permit, no bank statements, no identification documents, and no corroboration of any kind. The affidavit also contains other false claims by Defendant that Plaintiff will easily be able to prove as false if provided an opportunity to present evidence or cross-examine Defendant.

On January 6, 2026, the Magistrate issued an Order to Show Cause regarding subject matter jurisdiction. ECF No. 26. Plaintiff responded on February 3, 2026, presenting evidence that Defendant had signed Texas Secretary of State Form 202 under penalty of perjury on June 25, 2025—after this lawsuit was filed—identifying himself as an "individual resident" of the State of Texas and providing a personal address at 1813 FM 69 S, Sulphur Springs, Texas, 75482. ECF No. 27, Attachment A. Plaintiff requested an evidentiary hearing and leave to amend. ECF No. 27.

Defendant responded on February 18, 2026, submitting a second declaration (the "Second Doucette Declaration") again asserting domicile abroad, this time re-emphasizing Finland, and characterizing the Texas form as merely an administrative step for a nonprofit. ECF No. 28.

On March 7, 2026, Plaintiff filed an Emergency Supplement attaching a filing from the French court proceedings in which Defendant's own French attorney represented to a French tribunal, in a court filing submitted that same month, that Defendant was domiciled in France "domicilié La Combe de Ferrière 48160 SAINT-MICHEL-DE-DEZE (France)." ECF No. 29, Attachment A. In other words, at the precise moment Defendant was telling this Court he lived in

Page 10 – **RESPONSE**

Finland, his own lawyer was telling a French court he was domiciled in France. Plaintiff again requested a hearing.

The Magistrate issued her Findings and Recommendation on April 28, 2026, without holding a hearing, without allowing Plaintiff to present evidence that would disprove Defendant's claims or that is relevant to issues raised by the Magistrate in her ruling, without permitting cross-examination, and without requiring Defendant to produce a single piece of documentary evidence. ECF No. 30.

## ARGUMENT

**I.   THE MAGISTRATE COMMITTED REVERSIBLE ERROR BY RESOLVING DISPUTED CREDIBILITY QUESTIONS WITHOUT AN EVIDENTIARY HEARING.**

The Magistrate resolved a genuinely disputed factual question—where was Defendant domiciled on December 3, 2024?—entirely on competing paper submissions, without allowing Plaintiff any opportunity to test Defendant's credibility through cross-examination or to present additional evidence. This was legal error.

When a defendant mounts a factual attack on subject matter jurisdiction and presents evidence that jurisdiction is lacking, the court may look beyond the pleadings and consider extrinsic evidence. But where the factual dispute is genuine and the jurisdictional determination is intertwined with disputed credibility, the court must give the plaintiff an opportunity to be heard. *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996); *see also Trentacosta v. Frontier Pacific Aircraft Indus., Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987) (reversing dismissal for lack of jurisdiction where district court failed to allow discovery on jurisdictional facts).

Page 11 –  **RESPONSE**

This case presented a textbook credibility dispute that demanded a hearing. The record contained the following directly contradictory sworn representations made by or on behalf of Defendant within a nine-month period:

(1) June 25, 2025: Defendant signed Texas Form 202 under penalty of perjury, affirming he was an "individual resident" of the State of Texas with a personal address in Sulphur Springs, Texas.

(2) November 6, 2025: Defendant filed a sworn declaration in this Court stating he had "resided primarily in Finland" since 2024 and that the French property was merely a temporary visit location.

(3) February 18, 2026: Defendant filed a second sworn declaration again claiming domicile abroad, implying Finland.

(4) Early March 2026: Defendant's own French attorney filed papers in a French tribunal identifying Defendant as domiciled in France: "domicilié La Combe de Ferrière 48160 SAINT-MICHEL-DE-DEZE (France)."

These four representations are mutually irreconcilable. Defendant cannot simultaneously be domiciled in Texas, Finland, and France. At least two, and possibly three, of these representations are false. The Magistrate herself acknowledged having "some doubt about whether Defendant was in Finland or France at the time of service." ECF No. 30 at 12. That acknowledgment makes the denial of a hearing indefensible. A court that harbors genuine doubt about a declarant's credibility on the dispositive factual question has an obligation to resolve that doubt through a hearing—not to weigh competing declarations on paper and decide in favor of the party making contradictory claims.

Page 12 – **RESPONSE**

Plaintiff requested an evidentiary hearing no fewer than three times—in ECF No. 27, in the text of that filing's argument section, and again in ECF No. 29. The denial of that request, in the face of documented, sworn inconsistencies, deprived Plaintiff of the only meaningful mechanism by which the truth could be discovered: the opportunity to cross-examine Defendant under oath in the presence of the Court.

## II.    THE MAGISTRATE IMPROPERLY CREDITED DEFENDANT'S SELF-SERVING DECLARATIONS DESPITE DIRECT EVIDENCE OF DISHONESTY AND IMPOSED AN ASYMMETRIC AND UNDEFINED BURDEN ON PLAINTIFF.

The practical effect of the Magistrate's ruling is to create an impossible standard for victims of fraud who seek federal jurisdiction over a defendant who refuses to have a consistent, verifiable domicile. The Magistrate concluded that Plaintiff had not carried his burden to show Defendant was domiciled in Texas as of December 3, 2024. But in reaching that conclusion, she effectively required Plaintiff to disprove statements that Defendant himself admitted were made to advance his interests at any given moment—without giving Plaintiff any tools to do so.

Consider the evidence Plaintiff produced: a sworn, signed, government filing in which Defendant represented, under penalty of perjury, that he was an individual resident of the State of Texas with a personal address in that state. This is not hearsay. It is not speculation. It is Defendant's own written, signed, sworn representation to a government authority. In any other context, a sworn statement by the opposing party would be treated as a significant admission.

The Magistrate dismissed this evidence as "simply an administrative step to establish a nonprofit," citing the general proposition that a person may have multiple residences but only one domicile. ECF No. 30 at 11. That may or may not be true as a legal matter—but it does not follow that a sworn declaration of Texas residency is therefore worthless as evidence. The

 Page 13 –  **RESPONSE**

Magistrate credited Defendant's unsupported assertion that the Texas form was administrative while simultaneously discounting Plaintiff's evidence as insufficiently probative—all without hearing from either party in person.

This asymmetry is stark. Defendant's declarations were accepted as credible despite containing no corroborating documentation and despite being directly contradicted by his own lawyer's representations to a foreign court. Plaintiff's evidence—an actual sworn government filing signed by Defendant—was discounted. One must ask: what evidence would have satisfied this standard? If Plaintiff had hired a private investigator who photographed Defendant at the Texas address, Defendant could simply have filed another declaration claiming he was "just visiting." If Plaintiff had obtained Texas utility records tied to that address, Defendant could have said the family member used the utilities. The standard the Magistrate applied appears to demand that Plaintiff produce evidence so overwhelming that it eliminates every conceivable excuse—a burden that does not exist in law and that no plaintiff could meet against a defendant who has demonstrated a willingness to make sworn misrepresentations to courts and government agencies as the situation requires.

This case is, at its core, a fraud case. The fundamental allegation is that Defendant lies—to business partners, to notaires, to banking institutions, to attorneys, and to courts. It would be deeply perverse if Defendant's demonstrated pattern of dishonesty were the very mechanism by which he escaped accountability in federal court. Yet that is precisely the result of the Magistrate's ruling: the more brazenly a defendant is willing to misrepresent his whereabouts and domicile to different authorities in different countries, the better his chances of defeating federal jurisdiction.  Under the Magistrate's ruling, a Defendant who lied while committing fraud can escape consequences by just telling more lies as needed at every stage into perpetuity and never

 Page 14 –  **RESPONSE**

be required to provide any supporting evidence or explain evidence presented by the Plaintiff that contradicts Defendant's claims. That cannot be the law.

### III.    THE MAGISTRATE LACKED JURISDICTION TO ADDRESS THE MERITS AND COMMITTED ERROR IN DOING SO.

If, as the Magistrate concluded, this Court lacks subject matter jurisdiction over this action, the Court has no authority to address the merits of the claims. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998) ("[W]ithout jurisdiction the court cannot proceed at all in any cause."). Yet the Findings and Recommendation devotes five pages to two separate merits-based grounds for dismissal: statute of limitations (ECF No. 30 at 13-15) and claim preclusion (ECF No. 30 at 15-18). These rulings were issued without jurisdiction to issue them and should be rejected by the District Court as surplusage. Beyond the jurisdictional impropriety, the merits analyses are legally and factually flawed.

**On the statute of limitations:** The Magistrate concluded that Plaintiff's claim is time-barred because Plaintiff knew of the fraud by October 28, 2022, when his French attorney confirmed the power of attorney was forged. ECF No. 30 at 15. But this analysis conflates knowledge of one fraudulent act with knowledge of the complete fraud. Oregon's discovery rule asks when a plaintiff "knew or should have known" of the fraud at a level sufficient to trigger the obligation to sue. Plaintiff's complaint alleges that the documentary confirmation of the fraud scheme was not received until July 3, 2023. Compl. ¶ 79. Even then, Plaintiff continued to diligently investigate before filing a lawsuit. The nature of fraud is that it is elusive. Conmen by nature construct fraud schemes to cover their tracks. Moreover, fraud schemes tend to be ongoing and don't always end at a precise date. The victim cannot sue to early as the claim will be dismissed for lack of evidence, but also not too late to satisfy the statute of limitations. For

Page 15 –   **RESPONSE**

those and other reasons, the exact date that triggers the limitations period is a factual question that cannot be resolved at the pleading stage, particularly in the absence of evidence, discovery, briefing, or a hearing on the merits.  The Magistrate's ruling requires the Plaintiff to file a lawsuit at the first suspicion that something is wrong - well before the Plaintiff is certain that fraud occurred - which presents a host of pitfalls.  If Plaintiff filed at the first suspicion, well before the fraud was confirmed, he could potentially file an unwarranted lawsuit if his first suspicion was incorrect and fraud was later shown not to have occurred.  Plaintiff should not be punished for being responsible and waiting until he was certain fraud had occurred before filing his lawsuit rather than to file at the first moment he began to wonder and potentially make false accusations.

**On claim preclusion:** The Magistrate explicitly acknowledged that she did not have the French complaint to compare with the claims here, and that it was therefore "unclear" whether the claims from this case could have been joined with those in France. ECF No. 30 at 18. A finding of claim preclusion requires the court to determine that the claims "could have been joined" in the prior action. That determination is impossible without reviewing the pleadings from the prior action. The Magistrate proceeded anyway, solely on the basis of Defendant's self-serving characterization of what the French proceedings decided.  It is far from clear that the full range of civil damages sought by Plaintiff here—including punitive damages, opportunity costs, attorney's fees, and other consequential damages—could have been sought or awarded in that forum.  In fact, Plaintiff was advised by his French attorney that he was specifically not able to pursue these costs in French court.  Defendant has also made false claims to the court regarding his return of money to Plaintiff, yet Plaintiff was not provided an opportunity to present evidence contradicting Defendant's claims nor to cross-examine Defendant.

 Page 16 –  **RESPONSE**

More fundamentally, neither of these defenses was ever properly pled by Defendant. He did not answer the complaint. He raised no affirmative defenses. Statute of limitations and claim preclusion are affirmative defenses that must be raised in a responsive pleading under Fed. R. Civ. P. 8(c). They cannot be raised for the first time in a declaration accompanying an emergency motion to quash a default—let alone *sua sponte* by the Court on behalf of a party who has made no such argument. The Magistrate essentially acted as defense counsel, identifying and briefing affirmative defenses that Defendant himself never raised. That is not the Court's role, and Plaintiff should not be required to litigate against both the Defendant and the Court.

### IV.    THE DEFENDANT'S WILLFUL FLOUTING OF THIS COURT'S PROCESS SHOULD NOT BE REWARDED, AND THE MAGISTRATE'S APPROACH CREATES DANGEROUS PRECEDENT.

The procedural history of this case bears emphasis because it is directly relevant to the equities of the Magistrate's ruling. Defendant was properly served with the Complaint on April 4, 2025. His answer was due April 25, 2025. He filed nothing. The Court issued a show cause order regarding prosecution on July 15, 2025. Defendant filed nothing. A default was entered on September 16, 2025. Defendant filed nothing. A motion for default judgment was pending as of September 29, 2025. It was only then—with the full procedural machinery of this Court aligned against him—that Defendant finally appeared, submitting an emergency declaration that asked this Court to unwind nearly a year of proceedings on the basis of his uncorroborated say-so.

This is precisely the conduct that the default judgment rules are designed to prevent and to address. The rules exist to ensure that defendants who receive lawful notice of a lawsuit cannot strategically delay and then selectively engage when it suits them. If a defendant can

Page 17 – **RESPONSE**

ignore a lawsuit for months, allow a default to be entered, and then escape all consequence by writing a letter to the Court asserting a convenient foreign address—with no documentary support, no corroboration, and contradicted by his own prior sworn statements—then the rules of procedure mean nothing.

The Magistrate's Findings and Recommendation, if adopted, sends the following message to defendants in fraud cases: ignore the lawsuit; allow a default; and when the time comes, send the Court an unsupported affidavit claiming to live somewhere difficult to verify. So long as the victim—who by definition has already been defrauded—cannot meet an undefined and practically impossible burden of proof about where you actually live, you will go free, as the court will deny Plaintiff's repeated requests for a hearing to provide evidence disproving your claims or to cross-examine you.

Plaintiff respectfully submits that the District Court should not adopt a ruling with these implications.

## V.     THE APPROPRIATE REMEDY IS AN EVIDENTIARY HEARING, NOT DISMISSAL.

At minimum, the errors identified above require that the case be remanded to the Magistrate with instructions to conduct an evidentiary hearing before ruling on the jurisdictional question. Such a hearing would allow the following, all of which were denied to Plaintiff:

(a) Cross-examination of Defendant regarding his claimed Finnish domicile and the basis for each of his contradictory sworn representations;

(b) Production of documentary evidence by Defendant supporting his claim of Finnish residence—including any Finnish residency permit, Finnish tax filings, Finnish bank accounts,

Page 18 –  **RESPONSE**

Finnish lease or ownership records, or other documentation that any person claiming domicile in a foreign country should readily be able to produce;

(c) Plaintiff's presentation of additional evidence, including but not limited to the full record of the French proceedings, evidence of Defendant's physical presence in France and Texas, evidence that contradicts multiple other claims made by Defendant in his two court filings, and any other evidence bearing on Defendant's actual domicile as of December 3, 2024 or Defendant's credibility related to his claims in court filings; and

(d) A reasoned credibility determination by the Court based on live testimony and documentary evidence rather than competing paper declarations.

Alternatively, if the District Court concludes that an evidentiary hearing is not warranted, Plaintiff respectfully requests that the Court consider whether the balance of disputed evidence—including the sworn Texas government filing, the French attorney's court representation of French domicile, and Defendant's own admission in his First Declaration that he was living at the French property through January 2025—is sufficient to support a finding of non-foreign domicile, or at minimum sufficient to deny dismissal and order the hearing.  In the scenario where an evidentiary hearing is not ordered, Plaintiff would request an opportunity to provide written evidence to the relevant questions to be decided and to Defendant's credibility overall.

## VI.    THE MAGISTRATE'S CONDUCT VIOLATED PLAINTIFF'S DUE PROCESS RIGHT TO A NEUTRAL DECISION-MAKER AND WARRANTS RECUSAL.

The Due Process Clause of the Fifth Amendment and fundamental commonsense principles of fairness and justice guarantees every litigant the right to a hearing before a neutral and impartial decision-maker. That guarantee is not merely formal. It requires that the judge actually function as a neutral arbiter—not as an advocate for one side. The Magistrate's Findings

and Recommendation, taken as a whole, crossed that line in a manner that warrants recusal and requires de novo consideration of all issues by the District Court.

The Ninth Circuit has made clear that a judge who abandons neutrality and assumes the role of advocate for one party commits reversible error. In *United States v. Pena-Garcia,* 505 F.2d 964 (9th Cir. 1974), the court found that a trial judge who interjected himself into the proceedings in a manner that conveyed to the factfinder the judge's own view of the evidence "usurped the role of competent counsel and assumed the role of the prosecution."

The Magistrate's conduct here presents precisely that type of advocacy. Defendant raised no affirmative defenses. He answered no complaint. He filed no motion to dismiss. He appeared for the first time—months after default—and submitted nothing beyond a bare declaration. Yet the Findings and Recommendation *sua sponte* identified, briefed, and ruled on statute of limitations and claim preclusion—defenses that belonged to Defendant to raise or forfeit. The Magistrate then resolved disputed credibility questions in Defendant's favor without affording Plaintiff any opportunity to be heard. Taken together, the Magistrate effectively provided Defendant with the legal representation and strategic advocacy he never sought for himself—all at Plaintiff's expense.

A court that raises defenses that a party has not raised, credits that party's uncorroborated assertions without scrutiny, denies the opposing party a hearing despite explicit requests, and produces a recommendation that reads as though written by defense counsel has ceased to function as a neutral decision-maker. While courts retain *limited* authority to raise issues *sua sponte* in exceptional circumstances, doing so without giving the parties an opportunity to address the issue risks crossing the line into advocacy and compromising judicial neutrality. *United States v Sainz*, 933 F3d 1080, 1086 (CA 9, 2019) ("If a court engages in what may be

Page 20 –  **RESPONSE**

perceived as the bidding of one party by raising claims or defenses on its behalf, the court may cease to appear as a neutral arbiter, and that could be damaging to our system of justice.").

The combined pattern here—sua sponte identification and briefing of unpled affirmative defenses; uncritical acceptance of Defendant's unsupported declarations while discounting Plaintiff's documented evidence; denial of a hearing despite Plaintiff's repeated requests; and a recommendation that went well beyond the jurisdictional question to effectively adjudicate the merits against Plaintiff on Defendant's behalf—satisfies every marker of impermissible judicial advocacy. Plaintiff is entitled to have these issues decided by a judge who functions as a neutral decision-maker, not as a surrogate for the opposing party. Accordingly, Plaintiff respectfully requests that the District Court, in addition to sustaining these Objections, refer the question of the Magistrate's recusal to the appropriate authority for consideration under 28 U.S.C. § 455, which requires recusal in any proceeding in which a judge's impartiality might reasonably be questioned.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the District Court sustain these Objections and decline to adopt the Findings and Recommendation of Magistrate Judge Potter (ECF No. 30).

Plaintiff further requests that the Court order an in-person evidentiary hearing at which both parties are required to appear and present evidence and testimony on the disputed jurisdictional facts, including cross-examination of Defendant regarding his claimed domicile and the contradictions in his sworn representations to this Court, to the State of Texas, and to a

French tribunal. If jurisdiction is found to exist, Plaintiff requests that the Court reinstate the entry of default and restore his motion for default judgment to the active docket.

A system of justice in which a fraud defendant may lie his way out of federal court—by serially misrepresenting his whereabouts to multiple authorities, ignoring the judicial process until the last possible moment, and then demanding credulous deference to his latest self-serving declaration—is no system of justice at all. The Court should decline to adopt that approach here.

DATED this 11th day of May, 2026

_____

Jared L. Wise, Pro Se

Page 22 –  **RESPONSE**